UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBRADO SOLANO, JR., | No. 2:15-cv-1064-KJM-EFB P |
| Plaintiff, | |
| v. | ORDER |
| PEREZ, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. ECF No. 17. Among other claims, he alleges that defendant Eslami, a surgeon at Methodist Hospital, was deliberately indifferent to his serious medical needs in his treatment of plaintiff's inguinal hernia. *Id.* at 3. Plaintiff has filed a motion to compel defendant Eslami to provide further responses to his interrogatories numbered 4, 5, 6, 7, and 13. ECF No. 54. For the reasons that follow, the motion is denied.

**I. Background**

The record before the court shows that plaintiff served his interrogatories on defendant Eslami on April 11, 2017. ECF No. 56 at 9. Defendant timely served responses thereto on May 11, 2017. *Id.* at 20. Plaintiff filed this motion to compel on June 5, 2017. ECF No. 54. On June 20, 2017, defendant served supplemental responses to the interrogatories that are the subject of plaintiff's motion. ECF No. 56 at 32. The challenged interrogatories along with both the initial and supplemental responses provided by defendant are:

1

<u>Interrogatory No. 4</u>: How long was the surgery process from time you started to end?

<u>Initial Response to Interrogatory No. 4</u>: Objection. This interrogatory is vague and ambiguous. Notwithstanding these objections and without waiving them, I am presently unable to answer this question since I am not the custodian of records for Methodist Hospital nor am I the custodian of records for the California State Prison. I am informed and believe that this information may be discernable from the anesthesia record, but I was not the anesthesiologist and do not presently have this information. Discovery is continuing.

<u>Supplemental Response to Interrogatory No. 4</u>: Objection. This interrogatory is vague and ambiguous. Notwithstanding these objections and without waiving them, I have now had the opportunity to receive and review plaintiff's medical records from Methodist Hospital which were not in my custody and control at the time I originally answered this interrogatory on May 3, 2017. A true and correct copy of the records subpoenaed from Methodist Hospital are attached hereto as exhibit A. The records indicate that plaintiff arrived at Methodist Hospital in Sacramento at 5:50 a.m. on April 24, 2013, to undergo a planned laparoscopic right sided inguinal hernia repair procedure with mesh. Plaintiff was prepped for the surgery by nursing staff. He also underwent a pre-anesthesia evaluation by Dr. Robert Devoe, the anesthesiologist. The records indicate that the pre-anesthesia assessment was conducted by Dr. Devoe commencing at approximately 7:29 a.m. Vital signs, oxygen saturation levels, and weight were within normal limits. Weight measurements were obtained and plaintiff's airway was examined. Plaintiff's heart and lungs were within normal limits. Dr. Devoe reviewed preoperative lab studies and there were no contraindications going forward. The records indicate that the anesthetic risks were discussed and that plaintiff elected to go forward with the surgery. Plaintiff also provided consent to go forward with the surgery with Dr. Eslami as reflected in the preoperative history and physical examination performed by Dr. Eslami.

After being prepped for surgery, plaintiff was taken to the operating room at approximately 8:32 a.m. General anesthesia was started at 8:40 a.m. At 8:47 a.m., the surgery was started by Dr. Eslami. The surgery was completed at approximately 9:05 a.m. Dressings were applied to the surgical wound at 9:06. Plaintiff was subsequently transported from the operating room to the postanesthesia care unit (PACU) at 9:25 a.m. By 9:45 a.m., plaintiff was waking up from the anesthesia. By 10 a.m., the notes generated by the postanesthesia care nurse, Ma Estoesta, R.N., indicate that plaintiff was awake and oriented. He had a perfect Glasgow Coma Scale score of 15, indicating he had spontaneous eye opening, was able to obey commands appropriately, and was oriented and able to converse clearly. By 10:20 a.m., plaintiff was alert and oriented and had good motor control.

Plaintiff was also evaluated by the anesthesiologist, Dr. Devoe, in the postanesthesia care unit. Dr. Devoe noted plaintiff was arouseable, able to follow simple commands, and had returned to his preanesthesia mental status. Respirations and cardiovascular function were normal. Plaintiff's pain was noted to be a 3 on a scale of 1 to 10, which was within the expected pain range. He had no anesthesia complications and was noted to be in good condition. At 10:29 a.m., plaintiff was transferred from the PACU to the ambulatory care unit and was in good condition. He ultimately left the hospital at 11:15 a.m.

<u>Interrogatory No. 5</u>: Is it "OK" for Plaintiff to walk 80 to 100 yards after surgery?

<u>Initial Response to Interrogatory No. 5</u>: Objection. This interrogatory is vague, ambiguous, and unintelligible. Notwithstanding these objections and without waiving them, Plaintiff was provided with standard patient discharge instructions following the April 24, 2013 surgery. Copies of these discharge instructions are contained in Plaintiff's medical records from the California State Prison, Sacramento, and are attached hereto as exhibit B. Among other things, Plaintiff was advised to avoid lifting objects over 10 points and to avoid heavy exertion. He was encouraged to walk three times a day. The discharge instructions did not document any specific limitations related to ambulation. The discharge instructions indicated that ten (10) Norco tablets were dispensed at 10:46 a.m. to help Plaintiff manage expected postoperative pain in the prison.

<u>Supplemental Response to Interrogatory No. 5</u>: Objection. This interrogatory is vague, ambiguous, and unintelligible. Notwithstanding these objections and without waiving them, it is okay for a patient to walk 80 to 100 yards on the first postoperative day and this is not contraindicated. To the contrary, walking was encouraged and was specifically included in plaintiff's discharge instructions. Copies of these discharge instructions were previously provided and are contained in plaintiff's medical records from the California State Prison, Sacramento. The discharge instructions are attached hereto as exhibit B. As reflected by the discharge instructions, plaintiff was advised to avoid lifting objects over 10 points and avoid heavy exertion. He was instructed to walk three times a day. The discharge instructions also indicated that ten (10) Norco tablets were dispensed at 10:46 a.m. to help plaintiff manage expected postoperative pain in the prison.

<u>Interrogatory No. 6</u>: After hernia repair surgery was over on 4/24/2013 how long was Plaintiff awake from the anesthesia?

<u>Initial Response to Interrogatory No. 6</u>: Objection. This interrogatory is vague and ambiguous. Notwithstanding these objections and without waiving them, I am presently unable to answer this interrogatory because I am not the custodian of records for Methodist Hospital and I am not in possession of the anesthesia record. Discovery is continuing.

<u>Supplemental Response to Interrogatory No. 6</u>: Objection. This interrogatory is vague and ambiguous. Notwithstanding these objections and without waiving them, please see defendant Dr. Eslami's supplemental response to special interrogatory number 4 above. The records from Methodist Hospital reveal that plaintiff was taken to the operating room at Methodist Hospital at 8:32 a.m. Anesthesia began at 8:40 a.m. The laparoscopic right inguinal hernia repair procedure performed by Dr. Eslami commenced at 8:47 a.m. and was completed by 9:05 a.m. A dressing was applied at 9:06 a.m. Plaintiff was then transferred from the operating room to the postanesthesia care unit at 9:25 a.m. By approximately 9:45 a.m., plaintiff was beginning to wake up from the general anesthesia in the PACU. By 10 a.m., plaintiff was awake and oriented to his situation. He was ultimately discharged from the PACU at 10:29 a.m. and transferred to the ambulatory care unit. Plaintiff left the hospital at 11:15 a.m.

<u>Interrogatory No. 13</u>: Did you feel the lump on the right testicle?

<u>Initial Response to Interrogatory No. 13</u>: Objection. This interrogatory is vague, ambiguous, assumes facts not in evidence, and is argumentative. On May 6,

2013, Plaintiff had some bruising around the incision site from the prior surgery and scrotum; however, this was not unexpected. There was no evidence of a lump on the right testicle on May 6, 2013, nor was there any evidence on examination that Plaintiff had developed a left inguinal hernia by that time.

<u>Supplemental Response to Interrogatory No. 13</u>: Objection. This interrogatory is vague, ambiguous, assumes facts not in evidence, and is argumentative. Notwithstanding these objections and without waiving them, Dr. Eslami responds as follows. Dr. Eslami first had occasion to see plaintiff at his outpatient office in Sacramento on February 11, 2013. Plaintiff was 43 years old and presented with a right inguinal hernia that had been present since October 16, 2012. He denied nausea or vomiting. Physical examination confirmed the presence of right inguinal hernia and surgery was envisioned.

Plaintiff was ultimately admitted to Methodist Hospital on April 24, 2013. A right inguinal hernia repair surgery with mesh was performed without complications. Plaintiff tolerated the procedure well.

Dr. Eslami had no further contact with plaintiff until May 6, 2013. On that date, plaintiff had some bruising around the incision site from the prior surgery and his scrotum. However, this was not unexpected. Dr. Eslami found no evidence of a lump on the right or left testicle on May 6, 2013. There was no evidence on examination that plaintiff had developed a recurrent right inguinal hernia or that he had developed a new left inguinal hernia by that time.

ECF No. 56 at 24-32.

**II. Governing Law**

Rule 33(a) of the Federal Rules of Civil Procedure generally allows a party to federal litigation to serve 25 interrogatories on another party. Under Rule 33(b), the recipient is obligated to respond to the interrogatories under oath within 30 days of service. If the serving party is dissatisfied with the response, he or she may move to compel a further response under Rule 37. Such a motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Rule 37 further empowers the court to order a nonresponsive party to pay the moving party's reasonable expenses in making the motion. Fed. R. Civ. P 37(a)(5). Such an order may not issue, however, if the movant filed the motion without meeting and conferring with the other party or if the other party's nondisclosure was substantially justified. *Id.*

/////

/////

### III. Analysis

Plaintiff's motion to compel does not indicate what he found deficient in defendant's initial responses. They appear reasonable to the court; defendant provided the information that he could, and when he did not have the information requested, he indicated to plaintiff where it could be found. Moreover, once defendant obtained records from the hospital, he provided supplemental responses to plaintiff. As plaintiff has not indicated why defendant's responses are insufficient, his motion to compel must be denied. And, because the court is denying the motion, plaintiff may not obtain his expenses in preparing the motion under Rule 37(a)(5)(A).

### IV. Order

For the foregoing reasons, plaintiff's June 5, 2017 motion to compel (ECF No. 54) is hereby DENIED.

Dated: September 12, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE